PATRICK COUGHLIN vs. JAMES H. McELROY AND THE CITY OF BRIDGEPORT.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A municipality which has paid in good faith to a *de facto* officer the fees of his office, while he was performing the duties thereof and before judgment of ouster, is not liable for the same fees to the *de jure* officer after his title is legally established.

A city permitted its *de facto* tax collector, in paying his collections to the city treasurer, to deduct his commissions, instead of paying over the entire sum and presenting his bill for commissions, as required by the charter and ordinances. This method was in accord-

Coughlin *v.* McElroy et al.

ance with a custom which had existed for more than twenty years and each party acted in the utmost good faith. *Held* that under these circumstances the city must be regarded as having legally paid to its *de facto* collector the sums which it permitted him to retain.

If a city owes to an officer fees for a part of a year, a demand by him for the fees of the entire year is sufficient to complete his cause of action, and to make the city liable for interest from the date of the demand.

The legal right or title to a public office carries with it the right to its fees and emoluments; and therefore the *de facto* incumbent is liable to the *de jure* officer for fees collected by the former, although for official duties performed by him in good faith before judgment of ouster.

Argued November 12th, 1901—decided January 9th, 1902.

ACTION to recover the salary or commissions prescribed by law for the collector of taxes of the city of Bridgeport, brought to the Superior Court in Fairfield County where demurrers to the complaint filed by the respective defendants were overruled (*Roraback, J.*), and the cause was subsequently reserved by the court, *Robinson, J.*, upon a finding of facts, for the consideration and advice of this court. *Judgment advised for plaintiff.*

The material facts found are in substance these : McElroy filled the office of tax collector of the city of Bridgeport for the term ending April 10th, 1899, and was a candidate for election for the term succeeding this, as was also the plaintiff. As a result of the election in 1899, McElroy was regularly declared elected, and in good faith believing he had been so elected he qualified anew and entered upon the duties of his office for the succeeding term.

The plaintiff made no demand for the office at this time, nor did he qualify for it, but he at once brought suit in the Superior Court to determine whether he had been elected, and upon a full hearing that court decided against him. He then appealed to the Supreme Court of Errors, and that court set aside the judgment of the Superior Court, and judgment was ultimately rendered in his favor. Immediately thereafter, to wit, on the 8th of August, 1899, he qualified and took possession of said office.

McElroy, as an officer *de facto*, occupied the office from April 10th, 1899, to August 8th of the same year, and during this period he collected taxes to the amount of $636,670.65. For twenty years it had been the invariable custom in said office to retain from the taxes collected the fees due to the collector therefor, and to turn over to the city the amount collected, less said fees; and McElroy, as *de facto* incumbent of said office, followed that custom. These last-mentioned facts were found upon evidence to which the plaintiff objected, and the question of its admissibility is one of the questions reserved.

No objection to the course thus pursued by the tax collectors was ever made by the city or any one else.

McElroy, as collector *de facto*, retained in this way, and still retains, as his compensation for his work, the sum of $4,775.02, which was the percentage allowed to the collector by law. The amount of taxes collected for the entire year aforesaid was $755,009.45, and the percentage due the collector thereon was $5,662.56. The city has never paid the plaintiff this sum, nor has McElroy paid to the plaintiff any of the money retained by him as aforesaid, although due demand was made upon him therefor. McElroy, as *de facto* collector, made out all the tax bills for the year 1899, about 9,000 in all, a work of some magnitude, a portion of the benefit of which inured to the plaintiff after he took the office. It is the duty of the collector to enter upon the rate book all taxes paid. It has been the custom of the office to enter such payments first upon a blotter, and afterwards upon the rate book. The payments made to McElroy between April and August, 1899, about 8,000 in number, were entered by him on the blotter but not on the rate book. The entries of these payments upon the rate book were made by the plaintiff. It took about two months to do this, a longer time than it took to make out the tax bills. McElroy performed all the other duties of said office during the period last aforesaid. The ordinances of the city provide that the annual compensation of the tax collector shall be " for all moneys collected three quarters of one per cent." Neither the city nor McElroy had any reason

to believe that McElroy had not been legally re-elected to the office of tax collector; and whatever they did in this matter was done not to forestall or defraud the plaintiff, but in good faith and in the belief that McElroy was entitled to hold the office. Between the time he qualified and the bringing of this action the amount due the plaintiff for collections was $887.54, which has not been paid. The city has not demanded from McElroy the above mentioned sums retained by him. The city charter provides that the tax collector shall hold his office till his successor is chosen and qualifies. McElroy never presented a claim for the money retained by him as aforesaid, as required by the city ordinances in the case of claims made against the city; nor has the city paid McElroy anything for his services as collector between April 10th and August 8th, 1899, "except in so far forth as the retention of the money collected by said McElroy as hereinbefore set forth may operate as such payment." The plaintiff claims compensation for the entire year ending April 10th, 1900. From August 10th, 1899, to April 10th, 1900, the plaintiff gave his entire time to the duties of said office, and also of necessity employed a deputy to whom he paid $25 per week, and another assistant to whom he paid $18 per week.

*Daniel Davenport* and *Henry E. Shannon*, for the plaintiff.

*John C. Chamberlain*, for the defendant McElroy.

*Alfred B. Beers*, for the defendant city of Bridgeport.

TORRANCE, C. J. In the case of *Coughlin* v. *McElroy*, 72 Conn. 99, this court held, in effect, that the plaintiff in the present case had been elected as tax collector of the city of Bridgeport for the term beginning April 10th, 1899, and judgment in his favor to that effect was rendered in the Superior Court. Pending that contest, McElroy was in possession of the office and performed the duties thereof from April 10th, 1899, to August 8th of the same year. During this period, upon the facts found, it is clear that the plaintiff was the

tax collector *de jure*, and the defendant McElroy was the tax collector *de facto*. While holding said office as *de facto* collector, McElroy received and still retains certain sums of money, which the plaintiff seeks to recover from the city, or from McElroy, as the fees and emoluments of said office belonging to him as collector *de jure*.

The record presents for consideration two main questions : 1. Is the *de jure* officer, upon the facts found, entitled to recover from the city the sums so received and retained by the *de facto* officer ? 2. Is he entitled to recover them from the *de facto* officer ?

Although questions of this kind have frequently been considered and passed upon elsewhere, they are, so far as we know, questions of first impression in this State ; and as we have no statute upon the subject, they are to be decided by the rules and principles of the common law applicable thereto. The decision of the first question involves the decision of a subordinate one, namely, whether upon the facts found the city can be considered as having legally paid to McElroy the fees retained by him as collector *de facto*.

The plaintiff claims that under the city charter and ordinances it is the duty of the tax collector to pay over to the city the full amount collected, without deduction, and to present his claim for fees to the proper authorities ; and that McElroy having failed to comply with the provisions of the charter and ordinances in this respect, the money retained by him for fees cannot be regarded as having been paid to him by the city. Assuming, without deciding, that the plaintiff is right in his construction of the charter and ordinances of the city in regard to this matter, still we think that upon the facts found, and for the purposes of this case, the city must be regarded as having paid to McElroy the sums by him retained.

The sums retained from time to time were the precise sums fixed by law as the fees of the collector, and for aught that appears of record they were due at the very time they were so retained, upon collections then turned over to the city ; they were retained with the full consent and allowance of the

city, upon the understanding between it and McElroy that they were payments ; and they were so retained and allowed in the utmost good faith on the part of both, and in the full belief, on what then appeared to be reasonable grounds, that the payee was *de jure*, as he was *de facto*, the incumbent of said office.   Payments of this kind to *de jure* collectors had been made in this way by the city for twenty years, and with full knowledge of the facts no one had questioned their validity.   Fees retained by *de jure* tax collectors, under circumstances quite similar to those in the case at bar, have by our courts, in favor of sureties and taxing communities, been treated and regarded as payments ; and we see no good reason in the present case why the fees retained by a *de facto* officer should not be regarded, in favor of the city, as having been paid to him by it.   We think the evidence objected to was admissible to show such a payment, and that it was made in good faith ; and that the city, as against the plaintiff, must be regarded as having paid to the *de facto* collector, in good faith and before he was ousted, the sums retained by him.

This being so, the question is whether the city having in good faith paid to the *de facto* officer, before judgment of ouster, the fees of the office, is liable to the *de jure* officer for such fees.

Upon this question the decisions of the courts of this country are in direct conflict.   Quite a number of courts of high authority, among which may be mentioned those of California, Maine, Tennessee, Wyoming, and Pennsylvania, hold that such a payment does not protect the community against the claims of the *de jure* officer.   *Dorsey* v. *Smyth,* 28 Cal. 21 ;   *Andrews* v. *Portland,* 79 Me. 484 ;   *Memphis* v. *Woodward,* 12 Heisk. (Tenn.) 499 ;   *Rasmussen* v. *Carbon County,* 8 Wyo. 277, 45 L. R. A. 295 ;   *Philadelphia* v. *Rink,* 2 Atl. Rep. (Pa.) 505.   On the other hand, the courts of a majority of the States that have had occasion to pass upon this question hold that such a payment does protect the community.   Among the courts holding this doctrine may be mentioned those of the States of Michigan, New York, Missouri, Ohio, Kansas, Nebraska, and New Hampshire.   *Wayne*

*County* v. *Benoit*, 20 Mich. 176; *Dolan* v. *Mayor*, 68 N. Y. 274; *McVeany* v. *Mayor*, 80 id. 185; *State* v. *Clark*, 52 Mo. 508; *Westberg* v. *Kansas*, 64 id. 493; *Steubenville* v. *Culp*, 38 Ohio St. 18, 23; *Commissioners of Saline County* v. *Anderson*, 20 Kan. 298; *State* v. *Milne*, 36 Neb. 301, 19 L. R. A. 689; *Shannon* v. *Portsmouth*, 54 N. H. 183.

It seems to us that the rule laid down in this last class of cases is in reason the better one. It rests upon the familiar and reasonable rule that persons having the right to do business with a *de facto* officer like the one in question, have the right to regard him as a valid officer, and the right to make payments to him without the risk of having to pay a second time. This is the rule that protected the taxpayers in making payments to McElroy, and there appears to be no good reason why it should not be applied to payments made by the city to him in good faith and before judgment of ouster. Our conclusion is that the city is not liable to the plaintiff for the fees paid by it to the *de facto* collector.

With regard to the plaintiff's fees due for collections made by him since he took possession of the office, he is of course entitled to them. It is admitted by the pleadings that he duly presented his claim and demanded payment from the city. It is true that the claim so presented was for the fees for the entire year; but the greater includes the less, and we think his claim and demand included the fees earned by and due to him since he took possession.

The next question is whether the plaintiff is entitled to recover from the *de facto* officer the fees paid to such officer by the city; and the answer to this depends upon the answer to the further question, whether this can be done at common law and without the aid of a statute.

The courts of this country that have had occasion to pass upon this last question have almost unanimously answered it in the affirmative. That, in cases like the present, the legal right to the office carries with it the right to the salary and emoluments thereof, that the salary follows the office, and that the *de facto* officer though he performs the duties of the office has no legal right to the emoluments thereof, are prop-

ositions so generally held by the courts as to make the citation of authorities in support of them almost superfluous. Nearly all, if not all, cases hereinbefore cited upon both views as to the liability of the city, hold that the *de facto* officer, for fees and emoluments of the office received by him, is liable at common law to the officer *de jure.* So far as we are aware the only well-considered case taking a contrary view of the law is that of *Stuhr* v. *Curran,* 44 N. J. L. 181, 186, and that was decided by a divided court standing seven to five. We think the able dissenting opinion of Chief Justice Beasley in that case shows conclusively that at common law, in a case like the present, the *de jure* officer is entitled to recover from the *de facto* officer. Another well-considered case directly in point in favor of this view is that of *Kreitz* v. *Behrensmeyer,* 149 Ill. 496, 24 L. R. A. 59. As before intimated, this court has not heretofore had occasion to decide a question similar to the one now under consideration, but in two cases at least the judges who wrote the opinion of the court have expressed views in harmony with what we hold to be the law. Thus, CHIEF JUSTICE SEYMOUR, in *Samis* v. *King,* 40 Conn. 298, 310, said : " The right to the salary of an office (as such, independent of actual and valuable services rendered) must on principle depend upon the legal possession of the office." It is a grave question whether a merely *de facto* officer, even when he actually performs the whole duties of the office, can enforce the payment of the salary. The authorities seem to be that he cannot. CHIEF JUSTICE BUTLER, in *State* v. *Carroll,* 38 Conn. 449, 471, says that a *de facto* officer " cannot collect his fees, or claim any rights incident to his office, without showing himself to be an officer *de jure.*"

That this law will at times operate harshly against the *de facto* officer, and that it will so operate in the case at bar, must be conceded ; and the seeming injustice of it is forcibly stated in the majority opinion of the New Jersey court before cited ; but the courts must enforce the law as it is and not the law as they think it ought to be. If the law requires to be changed that must be left to the legislature.

Our conclusion is that upon the facts found in this case the plaintiff is entitled to recover from McElroy the fees retained by the latter as an officer *de facto*.

The Superior Court is advised (1) to render judgment in favor of the plaintiff against the city of Bridgeport for the sum of $887.50 with interest from the date of demand, (2) to render judgment in favor of the plaintiff against McElroy for the sum of $4,775.02 with interest from the date of demand.

Costs in this court will be taxed in favor of the plaintiff.

In this opinion the other judges concurred.