## MATTOX *v.* BOARD OF EDUCATION OF LIBERTY COUNTY.

1. Where the government in good faith pays the salary incident to an office to a de facto officer holding by color of title, it can not be · compelled to pay the salary a second time to the officer de jure when he has recovered the office; and the de jure officer, upon establishing his right to the office, would have to look to the de facto officer for the moneys so received by him. Where the action of the government, through its authorized board, is arbitrary and not in good faith, the contrary rule would apply.

2. Where a county board of education, having wrongfully paid the salary incident to the office of county superintendent of education to the de facto officer, refuses payment to the de jure officer upon the establishment of his right, a money judgment against the board of education would be of no practical benefit to such de jure officer, and mandamus would be the proper remedy.

No. 1022. NOVEMBER 16, 1918.

The Court of Appeals requested instructions from the Supreme Court upon the following questions (in Case No. 9278) :

"J. H. Mattox was, on the first Wednesday in October, 1910, regularly elected superintendent of education of Liberty County for the term of four years beginning May 7, 1912; and after his election had been declared by the proper authorities, his commission of office was duly forwarded by the Governor to the ordinary of Liberty County, with direction that it be delivered to Mattox upon presentation by him of a proper bond approved by the board of education of that county and his taking the oath of office. By act of the General Assembly, passed in 1912, the term of office for which he had been elected was extended to January 1, 1917. Prior to the commencement of the term for which he had been elected, he executed and presented to the board of education a bond conditioned upon the faithful performance of his duty under the law, the amount and sufficiency of which has not been questioned. The board of education refused to approve the bond, basing the refusal upon alleged misconduct of the plaintiff before his election to office, and his qualifications in respect to previous citizenship in

37

the county for a certain period. The plaintiff applied for the writ of mandamus to compel the board to approve his official bond, and, in response to the rule nisi issued upon the petition, the board filed a demurrer and an answer. The demurrer was sustained, and this was reversed by the Supreme Court. *Mattox* v. *Jones*, 141 *Ga.* 649 [81 S. E. 861]. The case was then tried and a verdict returned in favor of the plaintiff, and on exceptions by the board to the overruling of its motion for a new trial the judgment was affirmed by the Supreme Court. See *Jones* v. *Mattox*, 146 *Ga.* 629 [92 S. E. 202]. Before the last decision of the Supreme Court, the plaintiff filed the present suit against the board of education in their official capacity, for a part of the salary which he claimed was due him as county superintendent of education, and later, by amendment, after his term of office had expired, sued for the amount of the fixed salary for the entire term of four years and eight months, it being alleged in the petition that the defendant had illegally elected another person to fill the office, and had illegally been paying to that person the plaintiff's salary since the first of May, 1912. The defendant filed a general demurrer, on the ground that 'said petition is not sufficient in law.' The court sustained the demurrer and dismissed the petition, and to that ruling the plaintiff excepts. It is contended by counsel for the defendant in error that the court properly sustained the demurrer, because 'there is no authority of law for suing the County Board of Education of Liberty County, Georgia,' and 'the petitioner shows that the salary has been paid to a de facto officer; and when so paid, the de jure officer can not maintain an action for the same against the county authorities.'

"1. Would the rule as stated in *Morel* v. *Sylvania & Girard R. Co.*, 134 *Ga.* 687 [68 S. E. 588], that 'a de jure officer can not recover from the government, or its subordinate corporations, the amount of salary paid to a de facto officer while the latter occupied the office and discharged its duties, although he was subsequently ousted at the instance of the de jure officer,' have application in the present case, where the issue as raised was not between the two officials themselves, but where the contest was entirely between the de jure officer and the governing authority, and where the alleged officer de facto came into office solely by the illegal act of the governing authority itself?

"2. If the rule indicated does not preclude a recovery by the plaintiff as against the governing authority, does the fact that the claim does not arise out of any contractual relation between the parties (and thus might be distinguished from suits such as have been recognized in the case of Board of Education v. Palmer, 134 Ga. 662 [68 S. E. 583]), but is intended to compel the board to pay a salary fixed and established by law, make mandamus the proper and exclusive remedy?"

H. H. Elders, for plaintiff.

W. B. Stubbs and Parker & Parker, for defendant.

GILBERT, J. 1. Where the government in good faith pays the salary incident to an office to a de facto officer holding by color of title while he is still in possession of the office, the government can not be compelled to pay it a second time to the officer de jure when he has recovered the office. Where, however, the government, through its authorized board, does not act in good faith, but arbitrarily and illegally deprives the de jure officer of his office, and pays the salary incident thereto to one who performs the duties of the office by virtue only of the illegal acts of the board, the de. jure officer is entitled to recover his salary.

The excerpt from the decision of Morel v. Sylvania & Girard R. Co., (supra), in the first question propounded by the Court of Appeals, was not an adjudication by this court, and did not rule upon the question herein involved. That case involved a suit between an individual and a railroad company; and while the court, in the opinion, stated a principle that had been held in other jurisdictions, it also stated that "the present case does not involve a governmental corporation, but a case of an ex-president and ex-officials of a railroad corporation remaining in possession and causing salaries to be paid to themselves without authority of the company . . The rights of the public dealing with de facto officers are not involved." The statement of the rule as between the public and de facto officers was obiter. The quoted extract from the opinion was used merely as an illustration and by way of argument. The principle involved in the first question propounded is one of first impression in this State. The necessity of orderly government and for the remuneration of those who carry out the duties of government forms the basis for the rule that has been adopted rendering the government immune from the further payment of salaries where it has, in good faith, paid to a de facto

officer holding under color of title. In such a case the de jure officer who afterwards establishes his right to the office must look to the de facto officer to recover the salary wrongfully paid to the latter. Governmental boards and agents can not be allowed to arbitrarily and illegally prevent one rightfully entitled to a public office from discharging the duties thereof, and deprive him of the salary incident thereto; otherwise a governmental board constituted for ministerial purposes might deprive the people themselves of their right to select their own public officers. For the reason above stated we think the correct rule is dependent upon the good faith of the action of the board in depriving the de jure officer of his office and the payment of the salary to the de facto officer. "The salary of an official position belongs to the officer occupying such position, as an incident to the office, and does not depend upon his performance of the duties of the office." Leonard *v.* Terre Haute, 48 Ind. App. 104 (93 N. E. 872); Throop on Public Officers; § 516. Upon the various phases of this question the courts of this country are in direct conflict, and present a variety of rules. For a thorough consideration of the different rules and opinions entertained reference is made to Mechem's Public Offices and Officers, § 332 et seq.; Throop on Public Officers, § 513-516; Coughlin *v.* McElroy, 74 Conn. 397 (50 Atl. 1025, 92 Am. St. R. 224). The case of Coughlin *v.* McElroy, cited above, is a thoroughly considered case, citing many decisions from the courts of many States upon the question. The facts of that case show that the de facto officer was the incumbent who failed of re-election, but, believing that he had been re-elected, retained the office until the Supreme Court decided against him. In the meantime the City of Bridgeport continued to pay him the fees of the office, and it appeared that neither the municipality nor the de facto officer had any reason to believe that the re-election of the incumbent was in doubt. The bona fides of the transaction was therefore fundamental.

2. The salary due a county superintendent of education is paid out of public funds when approved by the county board of education. The county board is not the custodian of public funds. It is not a body corporate with authority to sue and be sued in the ordinary sense. Section 1525 (d) of Park's Code, cited by counsel for plaintiff, is not operative in Liberty County. It is a part of the act of the General Assembly of 1912, which was intended to

have the effect of a general law, but with local application. Park's Code, § 1525 (a). A money judgment against the board of education for salary due the superintendent would be of no practical benefit to the latter, as it could subject nothing to levy and sale; therefore a suit at law of this character affords the officer no remedy. Mandamus is the remedy to compel a public officer or a county board to perform a duty imposed by law. It is the remedy in this case, because it is the only adequate and specific remedy at law. It is available only when it is exclusive. Civil Code (1910), § 5440; *Shannon* v. *Reynolds,* 78 *Ga.* 760 (3 S. E. 653); *Gamble* v. *Clark,* 92 *Ga.* 695 (19 S. E. 54); *West* v. *Hancock,* 103 *Ga.* 737 (30 S. E. 573); *Clark* v. *Eve,* 134 *Ga.* 788 (6a), 790 (68 S. E. 598).

"The test to be applied, therefore, in determining upon the right to relief by mandamus, is to enquire whether the party aggrieved has a clear legal right, and whether he has any other adequate remedy, since the writ belongs only to those who have legal rights to enforce, who find themselves without an appropriate legal remedy. In this sense mandamus may be regarded as a dernier resort, to be used when the law affords no other adequate means of relief. And whenever the conditions above noticed coexist, the right to the extraordinary aid of a mandamus may be regarded as, to that extent, ex debito justitiæ. To warrant the relief, however, the right whose enforcement is sought must be a complete and not merely an inchoate right." High's Extraordinary Legal Remedies (3d ed.), § 10. For a collection of the decisions of this court with reference to the availability of mandamus as a remedy see 9 Michie's Enc. Dig. Ga. R. 163, 164; Eureka Pipe Line Co. *v.* Riggs, 75 W. Va. 353 (83 S. E. 1020, Ann. Cas. 1918A, 995).

*All the Justices concur, except Atkinson, J., who dissents as to the first division of the opinion. Fish, C. J., concurs specially.*