## John B. Hittell, Appellee, v. City of Chicago, Appellant.

### Gen. No. 31,066.

1. OFFICERS AND PUBLIC EMPLOYEES—*when payment of salary to de facto holder not in good faith.* In an action by a civil service employee to recover salary accruing during the period of his wrongful exclusion from office evidence held to show that payments of salary to the *de facto* incumbent were not made in good faith.

2. OFFICERS AND PUBLIC EMPLOYEES—*right of wrongfully excluded civil service employee to back salary.* A civil service employee wrongfully excluded from his position is entitled to recover all of the salary accruing during the period of his illegal exclusion, notwithstanding the payment to the *de facto* incumbent of all of the salary appropriated for the position, where both the exclusion and such payment of salary were in bad faith.

Appeal by defendant from the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1926. Affirmed. Opinion filed December 29, 1926.

FRANCIS X. BUSCH, Corporation Counsel, and FRANCIS J. VURPILLAT, Assistant Corporation Counsel, for appellant; W. ARNOLD AMBERG and ROY S. GASKILL, Assistant Corporation Counsel, of counsel.

PERLMAN, GOODMAN & SCOLNIK, for appellee; AVERN B. SCOLNIK, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

March 8, 1923, John B. Hittell, plaintiff, began suit in the circuit court for back salary as chief street engineer for the City of Chicago. There was a trial before the court, without a jury, and a judgment for the plaintiff in the sum of $25,500. This appeal is therefrom.

Hittell v. City of Chicago, 243 Ill. App. 14.

The claim of the plaintiff is for salary alleged to be due him as chief street engineer of the board of local improvements—a position under the act regulating the civil service of cities—for the period beginning with September 19, 1916, and ending February 28, 1923. In his amended declaration, the plaintiff alleges, in substance, that he is, and has been continuously, since September 19, 1916, the duly qualified and legally appointed chief street engineer of the board of local improvements of the City of Chicago; that during the period from September 19, 1916, to February 28, 1923, he was wrongfully, and in bad faith, prevented from occupying the position and performing the duties thereof, although he was at all times ready, able and willing, and demanded of the board of local improvements the right to do so; that after he was wrongfully and illegally refused occupancy of the position and employment as chief street engineer, he instituted a proceeding in mandamus in the circuit court of Cook county against the City, the board of local improvements, the civil service commission, and one Julius Gableman, who had been temporarily employed by the board of local improvements to perform the duties pertaining to the position of chief street engineer during the time the plaintiff was illegally and fraudulently deprived of his position, to compel them to permit him to occupy the position and receive the salary; and that, in that proceeding, it was ordered on October 1, 1921, that he be restored to his position. That order, it was further alleged, provided that he should be forthwith restored to his position, and placed upon the proper roster and pay roll with the same rights and duties, and receive salary therefor, as he would be entitled to receive had he not been denied reinstatement in his said position on and since September 19, 1916, subject to the laws, rules and ordinances pertaining to said position, and without prejudice to the right of said petitioner to seek in other appropriate

legal action proper remedy for the recovery of all salary due him from said City of Chicago or failure to reinstate and permit him to enter upon and perform the duties of said position from said September 19, 1916.

It was further alleged that the City and the other respondents appealed from that order for mandamus to the Appellate Court; that there the judgment of the circuit court was affirmed; that on February 20, 1923, a petition to the Supreme Court for a writ of certiorari was denied; and that on March 2, 1923, pursuant to a writ of mandamus issued on February 28, 1923, he was restored to his position as chief street engineer, and is now occupying that position, and securing the salary therefor.

It is further alleged that he has received no part of the salary, for the position, that accrued between September 19, 1916, and March 2, 1923, although there was an appropriation by the City for the position of chief street engineer for each year within that period; and that there is due him the sum of $27,066.67, as principal, and $3,237.50 as interest, to March 2, 1923, making a total of $30,304.17.

On April 6, 1923, there was filed on behalf of the City, by its assistant corporation counsel, a pleading in the form of an affidavit of merits, in which was set up the defense of the City. That defense is as follows: "That for and during the entire period from September 19, 1916, to March 2, 1923, the duties of the said position of chief street engineer, also known as chief engineer of streets, were performed by an incumbent *de facto* of said position, and, that all moneys appropriated or provided by the City Council as salary for said position of Chief Street Engineer or Chief Engineer of Streets for the period of time in question, has been paid by the City in good faith to the incumbent *de facto*." A general demurrer to the plea of the defendant was filed by the plaintiff and, sub-

sequently, overruled. The cause was then tried before the court without a jury.

The evidence produced at the trial consists of the testimony of the plaintiff, that of two witnesses for the defendant, Snelling, assistant paymaster of the City, and Foehringer, secretary of the civil service commission, together with certain exhibits, and in the course of the trial, it was agreed that the facts set forth in the amended petition in the suit for mandamus, should be considered as having been testified to by the plaintiff.

From the evidence and certain special findings of fact requested by the City and marked "Held," the following appears: The plaintiff since 1889 has been a civil service employee of the board of local improvements of the City of Chicago. He held different positions up to 1913, at which time he was promoted by the civil service commission to the position of chief engineer of the board of local improvements. That position he held continuously until January 19, 1916, at which time he was granted a leave of absence for one year. On September 19, 1916, he returned from his leave of absence, and reported for duty to the board of local improvements, and to its president, and to the civil service commission, and demanded, on each occasion, in writing, that he should be reinstated in his position, and assigned to duty; and, afterwards, on numerous occasions, the plaintiff requested the board of local improvements that he be reinstated in his position and place of employment. On September 19, 1916, he presented to M. J. Faherty, president of the board of local improvements, the following request in writing: "I hereby return from leave of absence granted me, and present myself for assignment to duty." On the same day, he made a request of the board of local improvements in writing as follows: "I hereby return from leave of absence granted me, and request that my name be restored to the eligible list." On Sep-

tember 23, 1916, in response to his written request to the board of local improvements, he received a written communication from Faherty as follows: "Your communication of the 19th inst., has been referred to the Civil Service Commission for such action as they see fit to take." All his requests for reinstatement and assignment to duty were refused. The plaintiff brought suit in mandamus, as set forth in his declaration, and as a result, on March 2, 1923, he was restored and reinstated, and has since occupied the position of chief street engineer, and received the salary belonging thereto. Meanwhile, between May 22, 1916, and April 9, 1917, the position was occupied by one Julius Gableman, by reason of so-called temporary appointments, and between April 9, 1917, and March 2, 1923, as a regularly certified appointee, and as the result of a promotional examination held by the commission; and during all that time, between May 22, 1916, and March 2, 1923, all of the money appropriated by the city council for salary for the position of chief street engineer, amounting to a total of $25,096.82, was paid to Julius Gableman.

At the request of counsel for the City, the court made the following finding of facts:

"That for the period beginning September 19, 1916, and ending April 9, 1917, one Julius Gableman was acting Chief Street Engineer of the Board of Local Improvements of the City of Chicago; that formal written requests were made from time to time by said Board of Local Improvements upon the Civil Service Commission of the City of Chicago for authority to make temporary appointment to said position of Chief Street Engineer, and that pursuant to written authority respectively granted upon such requests the said Julius Gableman was appointed to said position by said Board of Local Improvements, and he accepted the same and discharged the duties of the position; and that while he was so in possession of said position during the said period of time he was paid by

the defendant, City of Chicago all the salary or compensation appropriate for such position, and that this is the same salary and compensation which the plaintiff seeks to recover by this action.''

And further ''that for the period beginning April 9, 1917, and ending February 28, 1923, one Julius Gableman was acting Chief Street Engineer of the Board of Local Improvements of the City of Chicago; that formal written request for original appointment was made by said Board of Local Improvements upon the Civil Service Commission of the City of Chicago, and that pursuant thereto said Julius Gableman was certified by said Commission and appointed to said position by said Board of Local Improvements and he accepted the same and discharged the duties of the position.''

The principal errors relied upon for reversal by the defendant, the City of Chicago, are: (1) That all moneys appropriated for the payment of the salary for the position in question, from September 19, 1916, to February 28, 1923, were paid to a *de facto* incumbent, who actually occupied said position and performed the duties thereof, and (2) that all payments made to a *de facto* incumbent were made prior to the reinstatement of the *de jure* incumbent.

On the other hand, it is the contention of the plaintiff that the payment of salary to the *de facto* employee in order that it shall constitute a defense against a suit brought by the *de jure* employee, must be shown to have been made in good faith; and that the payment by the defendant of the salary appropriated for chief street engineer of the board of local improvements during the period in question was not made by the defendant in good faith.

Two questions arise: First, as a matter of fact, were the payments to Gableman, the *de facto* incumbent, made in good faith; second, as a matter of law, if not made in good faith, was the plaintiff entitled to recover?

First, we are bound to assume as the result of the opinion of this court in the mandamus proceedings— 227 Ill. App. 607—that the plaintiff from September 19, 1916, to March 2, 1923, was legally entitled to occupy the position. Further, from certain language in that opinion, as, for example, "He was prevented from discovering the fraud perpetrated upon him through his confidence in the Civil Service Commission," and "the Relator (being the plaintiff here) delayed filing his petition on account of the illusive assurance given by the Civil Service Commission as to his reinstatement," we start with the adjudication that a fraud was perpetrated in preventing him from being reinstated. In answer to that, in the instant case, the City put in no evidence in explanation or condonation, or in any way exculpatory. It offered no evidence in reference to keeping the plaintiff out of his position—although he testified to his being kept out— or any evidence whatever, which would in any way support the alleged defense of good faith.

On the other hand, the evidence for the plaintiff shows that up to January 19, 1916, the plaintiff occupied the position of chief street engineer; that on that day he was granted, in a legal and regular way, a year's leave of absence; that he returned from his leave of absence on September 19, 1916, and presented himself, and applied personally and in writing for reinstatement and restoration to his position; that that fact is shown by the minutes of the meeting of September 20, 1916, of the board of local improvements; that the minutes further show that the board confirmed plaintiff's written demand to its president; that the president responded by writing to the plaintiff informing him that his letter had been referred to the civil service commission; that Gableman was a temporary appointee on April 9, 1917, when an attempt was made to promote him as a regular appointee to the position; that the plaintiff after his re-

turn and demand on September 19, 1916, was told to wait and that he would be reinstated; that he waited and demanded a number of times that his request be acted upon, and for a time relied upon the assurance given him that he would be reinstated.

Further, on the trial of the case, counsel for the City, with commendable frankness, said: "The documentary evidence that your Honor admitted, showed that these demands were made, and this man (meaning the plaintiff) was lulled into a sense he might be reinstated. * * * I know the record here is condemning. It can't be helped. It is an unfortunate thing for the City of Chicago, and simply shows that when these men in office will deliberately trample under foot the Civil Service Act, and ignore their duties with respect to civil service employee, they can bring judgment and damages and this sort of misfortune to the City." To the question, therefore, why was the *de jure* incumbent refused reinstatement and the *de facto* incumbent given at first temporary appointments and then a spurious effort made to give him a permanent appointment, and all throughout paid the salary that pertained to the position, the answer is obvious. It was done in bad faith in order to keep the plaintiff out and put one in who was not legally entitled to the position, and to provide that all the salary should go illegally to the *de facto* incumbent, instead of to the one rightfully entitled to it. From the record in this case, therefore, we feel bound to hold that the action, of those who represented the City, was inspired and accomplished as the result of an improper purpose, and the desire to have the salary of the position paid to the *de facto* incumbent instead of the one who was legally entitled to both the position and the salary; in other words, that the evidence shows that the salary was not paid out in good faith to Gableman.

Second. Not being paid out in good faith, is it the law that he may now recover his salary from the City?

This court held in *O'Connor v. City of Chicago,* 242 Ill. App. 634, where the chief clerk in the city comptroller's office—a position under the act [Cahill's St. ch. 24, ¶ 685 *et seq.*] regulating the civil service of cities— brought suit in assumpsit for back salary, which it was claimed had been paid to a *de facto* occupant of the position, that if the salary was not paid out in good faith, the plaintiff could recover. In support of that principle, the cases of *People v. Schmidt,* 281 Ill. 211, and *People v. Thompson,* 316 Ill. 11, were cited.

Counsel for the City urge that the *Thompson* case only decided that the payment of salary to the *de facto* officer after judgment reinstating the *de jure* officer is no defense to a suit for salary by the *de jure* officer for the period of time subsequent to the entry of the judgment, and that in that case no question of payment in good faith arose; and that the *Schmidt* case is the only decision by our Supreme Court that in any way even suggests that the right of the *de jure* incumbent to recover for back salary may be dependent upon whether or not the *de facto* incumbent has been paid in good faith.

An examination of the *Schmidt* case, however, shows that even there the subject of "good faith" was not a matter of controversy. The court there said, on page 213, "the principal question to be decided here is whether the payment of a salary provided for an office or position to a *de facto* employee or officer in said position is a good defense to a claim against the public corporation making such payment in an action against such corporation by a *de jure* officer or employee to recover such salary." In that case, where the issue was precipitated by a petition, answer and demurrer, it does not appear that the petition contained any allegations charging that payments of salary to the *de facto* incumbent were not made in good faith.

An examination of the *Thompson* case shows that all that was there involved, as regards salary, was that

which became due after the date of the judgment of the circuit court in certiorari proceedings quashing the record of the civil service commission; and the Supreme Court held that the payment of the salary to the *de facto* officer after judgment reinstating the *de jure* officer, is no defense to a suit for salary by the *de jure* officer for the period of time subsequent to the entry of such judgment.

No case has been cited and we have found none in this State, in which it has been held that where, in making payments to a *de facto* incumbent, bad faith is shown, the *de jure* incumbent is entitled to recover. In the decisions in this State, outside of the *O'Connor* case, *supra,* decided by this court, all we find in the way of enlightenment are certain dicta appearing in the *Thompson* and *Schmidt* cases, *supra.* In the *Schmidt* case there is the following language: "The question has never been passed upon by this court, where the salary has been paid, whether it could be recovered again from the city by the *de jure* officer. If the salary or compensation has been paid in good faith to a *de facto* employee during the time the position was in his possession, it cannot, on principle and by the weight of authority, be recovered again from the city, county, State or other governmental subdivision by the *de jure* officer."

In the *Thompson* case there is the following: "The rule of this State is, that the payment in good faith of the salary of an officer to a *de facto* officer, constitutes a bar to an action by the *de jure* officer for the salary paid to the *de facto* officer. The well defined exception to the above rule is that where the relator is illegally removed from his office and the salary has been paid to another person illegally appointed in his stead a writ of *mandamus* will be awarded requiring the reinstatement of the relator in office and the payment of his salary during his illegal removal."

Although, therefore, there is no actual decision by the Supreme Court on the question here directly involved, we are of the opinion that the conclusion reached in the *O'Connor* case, *supra,* is sound; that is, if the evidence shows that the payments to the *de facto* incumbent were not made in good faith, the *de jure* incumbent can recover. If the law were otherwise, as the court said in *Mattox v. Board of Education of Liberty County,* 148 Ga. 577, 579, ''a governmental board constituted for ministerial purposes might deprive the people themselves of their right to select their own public officers.''

For the reasons set forth, the judgment is affirmed.

*Affirmed.*

O'CONNOR, J., concurs.

MR. JUSTICE THOMSON specially concurring: I concur in the decision in this case, but do not agree with all that is said in the foregoing opinion. I believe the matter of ''good faith'' in the making of payments to the *de facto* officer was directly involved in the *Schmidt* case, the *O'Connor* case and the *Thompson* case, all referred to in the foregoing opinion, and therefore, that all those cases are entirely in point here and authority for our decision of this case.