## 37802. COTTON STATES MUTUAL INSURANCE COMPANY *v*. KEEFE.

Decided October 29, 1959—Rehearing denied November 18, 1959.

*Memory, Barnes & Memory, S. F. Memory,* for plaintiff in error.

*Blount & Gibson, Clarence D. Blount,* contra.

*Cook & Palmour,* amicus curiae.

Carlisle, Judge. W. A. Keefe, Sr., brought suit in the City Court of Waycross against Cotton States Mutual Insurance Company, alleging that the defendant was liable to him under the provisions of a certain automobile liability insurance policy issued to the Ware County Board of Education, on account of a collision between a school bus operated by an agent, servant and employee of the board, which collision resulted from the alleged negligence of the school bus driver at the time and place of the collision. The defendant insurance company filed a general de-

murrer to the petition as amended, the trial judge overruled that demurrer, and the exception here is to that judgment. For the purpose of this decision it is sufficient to say with respect to the facts alleged as to the occurrence that they were sufficient to show that the plaintiff's injuries and damage resulted from the negligence of the school bus driver. The sole question presented to this court by the exception to the overruling of the general demurrer relates to the right of the plaintiff, as a member of the general public, to recover from the school board's insurance carrier by a direct suit on the policy without first obtaining a judgment in an action ex delicto against the school board.

The plaintiff alleged that the Ware County Board of Education, in compliance with the provisions of the act approved February 25, 1949 (Ga. L. 1949, pp. 1155, 1156; Code, Ann., §§ 32-429, 32-431), purchased from the defendant insurance company a policy of automobile insurance "insuring the members of the general public against personal injury or death or damage to property resulting from negligent operation of the school buses owned and operated for the said Ware County Board of Education," and that said policy of insurance covered the operation of the school bus and was in force and effect at the time of the collision in question. A copy of the policy was attached to and made a part of the petition. Section 1 and section 3 of that act read as follows:

"Section 1. The various school boards of the counties, cities and independent school systems employing school buses, are hereby authorized and required to cause policies of insurance to be issued insuring the school children riding therein to and from school against bodily injury or death at any time therefrom resulting from an accident or collision in which said buses are involved. The amount of such insurance shall be within the discretion of the respective boards. . .

"Section 3. Be it further enacted, that such boards are hereby authorized to cause a provision to be inserted in said policies insuring the members of the general public against personal injury or death or damage to property resulting from the negligent operation of said buses. Nothing, however, in this law shall be construed as imposing legal liability upon such boards on account of such accidents. Wherever an insurance company issues a

policy containing such a provision, the company shall be estopped to deny its liability thereunder on account of the non-liability of said board."

The plaintiff in error contends that the policy in question was issued by the company and procured by the board pursuant to the provisions of the act approved March 4, 1955 (Ga. L. 1955, pp. 448-450). Section 1 of this act reads as follows: "A municipal corporation, a county or any other political subdivision of the State is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting therefrom to any person, or for damage to property of any person, or both, arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation, county, or any other political subdivision of the State, under its management, control or supervision, whether in a governmental undertaking or not, and to pay premiums therefor."

The 1955 act does not apply to school boards. A school board is not a political subdivision of this State, but is merely an instrumentality through which the county acts in school matters. *Mattox v. Bd. of Ed. of Liberty County,* 148 *Ga.* 577, 580 (97 S. E. 532, 5 A.L.R. 568); *Smith v. Bd. of Ed. of Washington County,* 153 *Ga.* 758 (2) (113 S. E. 147); *Burke v. Wheeler County,* 54 *Ga. App.* 81, 86 (187 S. E. 246). In enacting the 1955 law, the general assembly must be presumed to have been familiar with the 1949 act relating to school boards and with the last stated and well recognized rule of law. *Webb v. Alexander,* 202 *Ga.* 436, 439 (1) (43 S. E. 2d 668). Had it been the intent of the General Assembly to make the 1955 act applicable to school boards, it would have been a simple matter for it to have done so by expressly so providing therein. Not having so provided, reasonable construction of the 1955 act leads to the conclusion that the legislature intended that the 1949 act would continue to apply to school boards, and that the 1955 act would merely be supplementary thereto in that it would extend the provisions of the law granting permission to municipalities, counties, and other political subdivisions to provide public liability insurance on motor vehicles operated by those units of government.

Since the 1955 act does not apply to school boards, the sole remaining question is whether or not an action may be main-

tained on an insurance policy issued to a school board directly against the insurance company without first suing the school board. This question, however, presents no problem, since it was decided by this court in *Krasner* v. *Harper*, 90 *Ga. App.* 128 (2), 136 (82 S. E. 2d 267), that such an action would lie. This is true in this case notwithstanding the terms of the policy requiring as a prerequisite to a suit against the company the determination of the school board's liability either by suit or by agreement between the board, the company and the third party claimant. The policy also contains the provision that the terms of the policy in conflict with the statutes of the State wherein the policies issued are amended to conform to such statutes. The policy in this case was procured under the provisions of Section 3 of the 1949 act. As construed by this court in the *Krasner* case, that act authorizes suit by a third party claimant directly against the insurance carrier. That construction must prevail over any contrary provision of the policy. *Great American Indemnity Co.* v. *Durham*, 54 *Ga. App.* 353 (2) (187 S. E. 891). It follows that the suit in this case was maintainable against the insurance carrier, and that the trial court did not err in overruling the general demurrers thereto.

This case was considered by the whole court pursuant to the provisions of the act approved March 8, 1945 (Ga. L. 1945, p. 232).

*Judgment affirmed. Gardner, P. J., Townsend, Quillian and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, Chief Judge, dissenting. I dissent from the judgment because under the law and the terms of the insurance policy sued on an action for negligence will not lie directly against the insurance company. The policy provides: "No action shall be against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until the amount of the insured's obligation to pay shall have finally been determined either by judgment against the insured after actual trial, or by written agreement of the insured, the claimant and the company. . ." The act of 1949 does not expressly provide that an action may be instituted directly against the insurance company nor did it prescribe the terms of the policies. In view of the fact that neither a school

board nor a political subdivision could be sued in matters involving a governmental function, it was ruled in *Krasner v. Harper*, 90 *Ga. App.* 128 (82 S. E. 2d 267) that an action would lie directly against the insurance company. In my opinion the act of 1955, supra, was passed for three purposes: (1) to authorize further protection to the public from the negligent operation of vehicles even when driven in connection with a governmental function, and (2) to provide that political subdivisions shall be subject to suit to the extent of the insurance coverage on their vehicular operations whether governmental or not, and (3) to impliedly, at least, provide against a direct action against an insurance company for negligence. This conclusion is inescapable from the provisions of the act of 1955 (Ga. L. 1955, pp. 448, 449; Code, Ann., §§ 56-1013, 56-1014), as follows: "56-1013. Authorization of municipal corporations, county or political subdivision to acquire automobile liability insurance.—A municipal corporation, a county or any other political subdivision of the State is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting therefrom to any person, or for damage to property of any person, or both, arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation, county, or any other political subdivision of the State, under its management, control or supervision, whether in a governmental undertaking or not, and to pay premiums therefor. (Acts 1955, pp. 448, 449). 56-1014. Same; governmental immunity waived to extent of amount of insurance; pleading immunity as defense prohibited; reduction of verdict in excess of amount of insurance.—Whenever a municipal corporation, a county, or any other political subdivision of the State shall purchase such insurance the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased. Neither the municipal corporation, county or political subdivision of the State, as the case may be, nor the insuring company shall plead such governmental immunity as a defense and may make only such defenses as could be made if the insured were a private person. The municipal corporation, county

or any other political subdivision of the State shall be liable for negligence as herein provided only for damages suffered while said insurance is in force, but in no case in an amount exceeding the limits or the coverage of any such insurance policy. No attempt shall be made in the trial of any action brought against a municipal corporation, county or any other political subdivision of the State to suggest the existence of any insurance which covers in whole or in part any judgment or award which may be rendered in favor of the plaintiff, and if the verdict rendered by the jury exceeds the limits of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limits stated in the insurance policy. (Acts 1955, pp. 448, 449)". The statement in the majority opinion that the act of 1955 does not apply to school boards because they are not subject to suit is correct in that the act does not expressly subject a school board to suit, and it may not do so by implication. However, the 1955 act subjects political subdivisions to suits in a field where they were immune to suit before the act, and since the boards were authorized to procure insurance as agents for the political subdivisions they represented, the act of 1955 rendered the political subdivisions subject to suit on the contracts of their agents and the necessity for suing the insurance companies directly was obviated, and I think the General Assembly so intended.