67103. TEC AMERICA, INC. v. DeKALB COUNTY BOARD OF TAX ASSESSORS et al.

CARLEY, Judge.
The instant ad valorem tax case arises as a consequence of Arti-

cle 7, Section 1, Paragraph 4 of the Constitution of 1976. That constitutional provision provided, in relevant part, that "[t]he governing authority of any county or municipality may, subject to the approval of the electors of such political subdivision, exempt from ad valorem taxation, including all such taxes levied for educational purposes and for State purposes, all or any combination of [inventories of certain specifically enumerated] types of tangible personal property . . ." Pursuant to this constitutional provision, which authorized the adoption by local governments of the so-called "Freeport" exemption, a referendum was held in DeKalb County and the voters approved the grant of an ad valorem tax exemption as to certain types of inventories. Thereafter, the governing authority of DeKalb County passed an implementing resolution to the effect that inventories of those specified goods "shall be granted a partial exemption from ad valorem taxation . . ."

At all times relevant to the instant appeal, there was no State statutory provision specifying that the exemption from taxation which had otherwise been granted to inventories was conditioned upon the taxpayer's timely filing of an application therefor. The absence of an application requirement as a precondition for the inventory exemption was in direct contrast to the statutory provisions regarding the homestead exemption. See OCGA § 48-5-45 (a). It was not until the enactment of OCGA § 48-5-48.1, subsequent to the dates which are relevant here, that the tax exemptions for homesteads and for inventories were harmonized by a clear legislative pronouncement to the effect that a taxpayer's failure to file a timely application for the inventory exemption would constitute a waiver of that exemption. In addition to the absence of any State statutory provision on the subject of waiver in effect at the relevant times, the original implementing resolution as approved by DeKalb County did not provide that the inventory exemption it was granting would be conditioned upon the taxpayer's timely application therefor.

Notwithstanding this absence of authority of a State statute or a local ordinance, the appellee-DeKalb County Board of Tax Assessors (Board) independently determined that its official "office procedure" would be to regard the inventory exemption as completely waived or forfeited for any year in which the taxpayer had not claimed the exemption on a return filed by the April 1 deadline for the timely filing of county tax returns. The tax forms and instructions that the Board provided taxpayers for the years 1978 and 1979 did not state that the exemption for inventories would be considered waived if no return was filed claiming the exemption by the April 1 deadline. The tax forms and instructions for 1980 and 1981, however, did contain the following notice: "Filing for the 'Freeport' exemption must be made on or before April 1st, in the year in which exemption is sought. *Fail-*

*ure to do so constitutes a waiver for such exemption that year."* (Emphasis supplied.)

Appellant-taxpayer made a timely return claiming its inventory exemption for the years 1978, 1979, 1980 and 1981. The tax forms for 1982 differed from any of those of previous years. With regard to the inventory exemption, the 1982 forms contained the following notice: "Filing for the 'Freeport' exemption must be made on or before April 1st, in the year in which exemption is sought. Supporting documentation must be provided with this application." Thus, unlike the forms for the previous two years, the 1982 forms did not specify that the failure to file for the inventory exemption by April 1 would be deemed a waiver of the exemption for the year. According to appellant, it presumed that the consequence of its failure to file its 1982 tax return by April 1 would be the mere imposition of the standard 10% penalty for late filing, calculated after taking whatever exemption that would be applicable for its inventory. In other words, appellant did not anticipate that the Board would deem its failure to file a timely 1982 return to be a waiver of its entire inventory exemption and thus result in the imposition of the 10% penalty for late filing calculated with no allowance for the exemption. Based upon this understanding, appellant made the determination that its other internal financial and fiscal matters were more pressing than the timely filing of its 1982 tax return by April 1. It elected to complete these other matters, file a late return claiming its inventory exemption, and pay the 10% penalty that it anticipated would be assessed.

In June of 1982, subsequent to appellant's failure to meet the April 1 deadline for timely filing tax returns, the Board mailed appellant a "Notice of Assessment Change." The notice contained figures which were apparently based upon appellant's 1981 tax return but which also contained the notation that appellant's inventory exemption had been "Forfeited." In July, appellant filed its late tax return, claiming the inventory exemption. In response, the Board mailed appellant another "Notice of Assessment Change." This new notice was based upon the figures of appellant's late 1982 return with the exception that the inventory exemption was again "Forfeited."

Appellant filed a protest and appeal from the Board's assessment of its property without giving consideration to its inventory exemption. When its administrative appeals were unsuccessful, appellant appealed to the superior court. Cross-motions for summary judgment were made. After a hearing, the superior court denied appellant's motion and granted the Board's. The basis for the superior court's order was "that appellant waived its Freeport exemption by its failure to file its tax return and claim said exemption by April 1, 1982." It is from this order that appellant now brings the instant appeal to this court.

1. "Where rights are conferred by the Constitution or by statutes, mere rules of administrative bodies cannot amend or repeal those constitutional or statutory rights." *O'Neal v. Ga. Real Estate Comm.*, 129 Ga. App. 211, 212 (199 SE2d 362) (1973). "[T]he test of an administrative rule is twofold: (1) Is it authorized by statute, and (2) is it reasonable? An agency rule might be reasonable but unauthorized by statute, or authorized by statute but unreasonable. In either event, it could not stand." *Ga. Real Estate Comm. v. Accelerated Courses*, 234 Ga. 30, 32 (214 SE2d 495) (1975). As noted above, at all times relevant to the instant appeal the statutory provisions regarding the inventory exemption, as directly opposed to those regarding the homestead exemption, did not expressly provide that the taxpayer's failure to make a timely application therefor would be deemed a total waiver of the right to claim the exemption. Not until OCGA § 48-5-48.1, enacted subsequent to the instant case, was the procedure regarding the inventory exemption specifically harmonized with that controlling the homestead exemption, so that the former as well as the latter exemption was conditioned upon a timely application. Accordingly, the issue presented for resolution in the instant case is whether the Board's "office procedure" regarding waiver of the inventory exemption, which only now has explicit statutory authorization, was implicitly authorized under the former statutory provisions.

The Board first asserts that the applicable rule of statutory construction to be employed is that which provides that the grant of an exemption from taxation is to be construed strictly against the taxpayer and, unless it is clear that an exemption is to be granted, it is the duty of this court to rule in favor of the taxing authority. See *Fulton County Fed. S. & L. Assn. v. Simmons*, 210 Ga. 621, 624 (82 SE2d 16) (1954). However, this rule of statutory construction is not applicable in the instant case. Under the relevant statutes, there is no doubt that appellant was *granted* an exemption from taxation on its inventory. See *Great Northern Nekoosa Corp. v. Bd. of Tax Assessors*, 244 Ga. 624, 626 (2) (261 SE2d 346) (1979). The only question is whether appellant has waived or forfeited the exemption it has been granted. Under these circumstances, the applicable rule of statutory construction is that "forfeitures and penalties are not favored and statutes relating to them must be strictly construed, and in a manner as favorable to the person against whom the forfeiture or penalty would be exacted as is consistent with fair principles of interpretation. [Cits.]" *Moore v. Beneficial Fin. Co.*, 158 Ga. App. 535, 537 (281 SE2d 293) (1981). See also *Goldstein v. State Revenue Comm.*, 50 Ga. App. 317, 318 (3) (178 SE 164) (1934). The Board derives no benefit from the rule regarding strict statutory construction of tax exemptions.

2. In attempting to show a statutory basis for its "office proce-

dure," the Board invokes the rule of construction which provides that, "unless the contrary manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law and not to change it. [Cits.]" *Lamar v. Mc-Laren*, 107 Ga. 591, 599 (34 SE 116) (1899). Based upon this rule of statutory construction, the Board interprets the subsequent enactment of OCGA § 48-5-48.1 not as a change in the law, but as merely a statement of the law as it had existed previously. Thus, under the Board's interpretation, although the establishment of its "office procedure" predates the enactment of OCGA § 48-5-48.1, that procedure was implicitly authorized under the then existing law, which was merely made express by the subsequent enactment of OCGA § 48-5-48.1.

The rule of statutory construction relied upon by the Board appears to be applicable in only two instances: (1) When construing a provision which has been recodified from a previously existing statute; or, (2) When construing the original codification of a previously existing rule of law which was not statutory in origin. See *State of Ga. v. Camp*, 189 Ga. 209, 210 (2) (6 SE2d 299) (1939); *Sinclair v. Friedlander*, 197 Ga. 797, 799 (30 SE2d 398) (1944). In those limited circumstances where the provision to be construed has an obvious predecessor, it is only logical that the subsequent provision be construed consistently with its predecessor, unless a contrary construction manifestly appears from the words employed. See *Threlkeld v. Whitehead*, 95 Ga. App. 378, 395 (98 SE2d 76) (1957). In the instant case, however, OCGA § 48-5-48.1 has no direct predecessor and that statute merely adds to the existing body of law on the subject of the inventory exemption rather than restating it in its entirety. It would be anomalous to construe a subsequent *addition* to the body of the law on a subject as evincing no legislative intent to effect a change in the law as it had formerly existed. " 'From the addition of words it may be presumed that the legislature intended some change in the existing law . . .' [Cit.]" *C. W. Matthews Contracting Co. v. Capital Ford Truck Sales*, 149 Ga. App. 354, 356 (254 SE2d 426) (1979).

Moreover, even assuming that the rule of statutory construction relied upon by the Board were otherwise generally applicable in the instant case, it would appear that the exception recognized in the rule would be controlling. It "manifestly appears" that OCGA § 48-5-48.1 was intended to change the law. This is so because, at all times relevant to the instant case, there was in existence a clear and express statutory provision requiring that, on penalty of waiver, a taxpayer make a timely application for his homestead exemption. OCGA § 48-5-45. The validity of this statutory waiver provision was upheld long before tax exemptions for inventories were authorized. See *Duncan v. Proctor*, 195 Ga. 499, 502 (2) (24 SE2d 791) (1943). Despite this clear

precedent presented by the homestead exemption, a similar statutory waiver provision with regard to the inventory exemption was not originally enacted by the legislature. Since the General Assembly is presumed to have been familiar with the existing law regarding the homestead exemption, if its original intent had been to extend the applicability or rationale of that law to the exemption regarding inventories, it would have been a simple matter to have done so by express legislation. *Cotton States Mut. Ins. Co. v. Keefe*, 100 Ga. App. 715, 717 (112 SE2d 435) (1959), rev'd on other grounds 215 Ga. 830 (113 SE2d 774) (1960). That the General Assembly did not do so can only lead to the conclusion that the original legislative intent was *not* to extend the applicability or rationale of the homestead exemption filing provisions to the inventory exemption, and that this intent was not changed until enactment of OCGA § 48-5-48.1. *Cotton States Mut. Ins. Co. v. Keefe*, supra. Accordingly, it "manifestly appears" that enactment of OCGA § 48-5-48.1 had the effect of changing the then existing law regarding the inventory exemption so as to comport with the then existing law regarding the homestead exemption. OCGA § 48-5-48.1 has prospective application only. See generally *McCowan v. Davidson*, 43 Ga. 480 (1871). It follows that, at all times relevant to the instant appeal, there was no express or implicit statutory authority requiring that, on penalty of total forfeiture, the inventory exemption be claimed in a certain manner and by a certain time.

3. Lastly, the Board asserts that its "office procedure" is a reasonable requirement, especially when viewed in connection with the mandate of OCGA § 48-5-18 requiring tax returns to be filed by April 1 and that of OCGA § 48-5-45 requiring applications for homestead exemptions to be filed by April 1 on penalty of waiver.

We do not contest the reasonableness of the Board's "office procedure." However, an administrative rule may be reasonable and, unless authorized by statute, yet be unenforceable. *Ga. Real Estate Comm. v. Accelerated Courses*, supra. No ordinance of DeKalb County and, as discussed in Division 2, no State statute expressly or implicitly authorized the Board's imposition of the penalty of total forfeiture for appellant's failure to file a timely tax return on which the inventory exemption was claimed.

Moreover, if the sole criterion were "reasonableness," it is the Board's procedure which suffers in an interpretive analogy to the procedure applicable to the homestead exemption. In such an analogy, appellant's failure to file a timely return in 1982 should not be deemed a total waiver of the exemption that it had timely claimed in preceding years and should not result in the penalty of forfeiture of the entire exemption. See OCGA §§ 48-5-20, 48-5-45. Likewise, judged solely by a "reasonableness" standard, the Board's own action regarding its "office procedures" leaves much to be desired, as exempli-

fied by its history of changing the language of the notice provision on the forms that it supplied to taxpayers.

We do not hold that appellant may not be penalized for its failure to file a tax return by the April 1 deadline. Appellant may be assessed whatever penalty is authorized for such an untimely filing. All we hold is that forfeiture of its entire inventory exemption pursuant to the Board's internal "office procedure" was not an authorized penalty under any local ordinance or state law then in effect.

4. The trial court erred in granting the Board's motion for summary judgment and in denying appellant's on the basis that the inventory exemption was waived and forfeited by the failure to file a tax return claiming that exemption by April 1, 1982, as required by the Board's "office procedure." Accordingly, the judgment granting summary judgment to the Board on this basis is reversed. It appears, however, that certain *other* issues raised by the Board in opposition to appellant's motion as well as in support of its own motion were not expressly ruled upon by the trial court. In view of these unresolved issues, we cannot reverse the denial of summary judgment to appellant. Accordingly, the judgment is reversed as to the grant of summary judgment to the Board and affirmed as to the denial of summary judgment to appellant.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Banke, J., concur.*

DECIDED MARCH 20, 1984 — REHEARING DENIED MARCH 29, 1984.

*John A. Blackmon, William B. Wood,* for appellant.
*Richard W. Calhoun, George P. Dillard,* for appellees.