A90A2123. ANCHOR MOTOR FREIGHT, INC. v. DEPARTMENT OF TRANSPORTATION.
(404 SE2d 148)

BANKE, Presiding Judge.

The appellant is a trucking company involved in transporting automobiles. It has invested in a fleet of automobile-carrying trailers equipped with three axles, the first of which — the axle which would be located immediately behind the drive axle of the truck — is referred to as the "tag axle." The amount of weight borne by this axle can be adjusted by the driver from inside the truck through the manipulation of a switch which causes an air bag located between the axle and the frame of the trailer to inflate or deflate. The more this bag is inflated, the more weight the axle bears. At issue in this case is whether these axles constitute "lift axles" within the contemplation of OCGA § 32-6-26 (c) (3), with the result that they are required to be disregarded in computing the maximum weight the trailers can carry. The term "lift axle" is defined by OCGA § 32-6-26 (a) (2), to mean "any axle on any vehicle manufactured after July 1, 1978, *which axle may be raised or lowered with respect to the horizontal plane of the vehicle.*" (Emphasis supplied.)

The legislation at issue is designed to protect the state's highways by limiting the amount of weight bearing on the pavement at any specific point. Generally speaking, the amount of weight a vehicle is permitted to carry increases with the number of axles because the greater the number of axles the more the load is spread out over the road. Over a period from June 27, 1988, through December 8, 1988, the Georgia Department of Transportation issued 19 overweight citations to the appellant based on a determination that its tag axles constituted lift axles. The appellant filed an administrative appeal; and a

DOT hearing officer ruled in its favor, concluding that tag axles were not lift axles because they could not be raised and lowered with respect to the horizontal plane of the trailer in the manner, for example, of the axle on a dump truck. After viewing a demonstration of the mechanism, the hearing officer determined that while the inflation and deflation of the air bag caused the frame of the trailer to be raised and lowered with respect to the tag axle, this movement of the frame did not constitute a raising or lowering of the tag axle within the contemplation of the statute. However, the DOT Commissioner reversed that determination, concluding as follows: "Although the visual inspection of the vehicle during the course of the hearing appeared to indicate that there was no movement of the air axle, it can be assumed that movement existed even if it was infinitesimal because the change in the axle weight was evidence of that movement. Once it is concluded that the weights are shifted by the change in air pressure on the air bags, then a corresponding shift in the air axle with respect to the horizontal plane of the vehicle occurs even if such change is only visible in the deflection of the wheels on the vehicle." The Commissioner's ruling was affirmed by the superior court under the "any evidence" rule, and we granted the appellant's application for a discretionary appeal.

It is apparent that the General Assembly's concern in enacting the lift axle statute was the ability of a truck driver to adjust the weight on an axle from inside the truck, in such a manner as to frustrate enforcement of the statutory weight restrictions. In *Lance Trucking Co. v. Harris*, Case No. 2:88-CV-0044-WCO (decided 2/23/89) the United States District Court for the Northern District of Georgia rejected a constitutional challenge to the statute, based in part on evidence that drivers of trucks equipped with lift axles often operated with the lift axle in the up position in order to facilitate steering but were able to avoid detection by quickly lowering the axle upon approaching a weigh station or seeing an enforcement official. However, no similar evidence was presented in the present case concerning driver abuse of the air axle system used by the appellant; and the hearing officer noted that the appellant had made an unrebutted showing that failure to pressurize the air bag on a loaded trailer would give the driver less rather than more steering control and would also be uneconomical. *Held*:

Under the plain wording of the statute, it is the ability of the axle to be "raised or lowered with respect to the horizontal plane of the vehicle" which is determinative of whether it is a lift axle. The administrative hearing officer determined as a matter of fact in this case that the inflation and deflation of the air bags on the appellant's vehicles resulted in no observable movement of the tag axle. The Commissioner did not dispute that observation but based his decision entirely

on the assumption "that movement existed" even if it was infinitesimal because the change in the axle weight was evidence of that movement." We believe that to sanction the imposition of a fine by the department based solely on the metaphysical assumption that an "infinitesimal" movement of the axle was caused by the inflation and deflation of the air bag even though it was not observable would violate the rule of statutory construction that " 'forfeitures and penalties are not favored and statutes relating to them must be strictly construed, and in a manner as favorable to the person against whom the forfeiture or penalty would be exacted as is consistent with fair principles of interpretation. (Cits.)' [Cit.]" *TEC America v. DeKalb County Bd. of Tax Assessors*, 170 Ga. App. 533, 536 (317 SE2d 637) (1984). Accordingly, we reverse the judgment of the superior court and remand the case with direction that the decision of the hearing officer be reinstated.

*Judgment reversed with direction. Birdsong, P. J., and Cooper, J., concur.*

DECIDED MARCH 5, 1991 —
REHEARING DENIED MARCH 15, 1991 — ▮▮▮▮▮▮▮▮

*Hicks, Maloof & Campbell, Bruce M. Edenfield*, for appellant.

*Michael J. Bowers, Attorney General, George P. Shingler, Senior Assistant Attorney General, Eric A. Brewton, Assistant Attorney General*, for appellee.

Robert P. Farrell, *pro se.*