74913, 74914. JONES v. COTTON STATES MUTUAL INSURANCE COMPANY; and vice versa.
(363 SE2d 303)

SOGNIER, Judge.

Mark O'Gwin was seriously injured when the automobile he was driving was struck by vehicles driven by Billy George Stapler and Tony Hamill. Evelyn Jones, as guardian for O'Gwin, accepted the $10,000 liability coverage available to Hamill in exchange for a covenant not to sue him and then brought suit against Stapler, who was uninsured, serving Cotton States Mutual Insurance Company pursuant to OCGA § 33-7-11 as the uninsured motorist carrier of the policies covering O'Gwin. Cotton States filed an answer in its own name but two years later dismissed its answer as to the Count I allegation regarding Stapler's negligence, tendering payment to Jones of $50,000. Cotton States then moved for partial summary judgment as to Count II of Jones' complaint seeking bad faith penalties and attorney fees. Jones moved for summary judgment both on Count II of her complaint and on Count III, as amended, for abusive litigation pursuant to *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986). Jones appeals from the trial court's order on her motion in Case No. 74913; Cotton States cross-appeals from that same order as to its motion for partial summary judgment in Case No. 74914.

1. Both parties contend the trial court erred by denying their respective motions for summary judgment regarding Count II of Jones' complaint seeking bad faith penalties and attorney fees pursuant to OCGA § 33-7-11 (j). The trial court determined that the defenses raised by Cotton States failed to entitle it to summary judgment on Jones' claim but held, nevertheless, that a question remained for the jury whether Cotton States acted in good or bad faith in denying Jones' claim for over two years.

(a) Cotton States contends it was entitled to summary judgment on Count II because its defenses, two of which are the subject of enumerated errors, show no question of fact exists as to its good faith in

denying Jones' demand for payment. Cotton States first asserts the trial court erred by holding it was not entitled to a $10,000 "credit" for the liability insurance paid to Jones by the insurer of Hamill's vehicle in exchange for a covenant not to sue. O'Gwin was insured under five policies issued by Cotton States with a total of $50,000 uninsured motorist (UM) coverage available to him. It appears uncontroverted that O'Gwin incurred medical expenses exceeding $185,000 as a result of the accident. Cotton States argues, however, that because Jones, on behalf of O'Gwin, accepted $10,000 in settlement of claims against Hamill, Stapler's joint tortfeasor, it was entitled to write off that amount from the $50,000 it admits it owes O'Gwin in UM coverage.

In *Wages v. State Farm &c. Ins. Co.*, 132 Ga. App. 79 (208 SE2d 1) (1974), as in the case sub judice, the plaintiff was injured by two tortfeasors, only one of whom was insured. The plaintiffs' UM carrier in *Wages* sought to offset its coverage by the amount paid by the insured tortfeasor, in effect absolving it from all liability since the amount of the plaintiffs' injuries, as determined by jury verdict there, did not exceed the insured tortfeasor's liability coverage. In *Wages*, we affirmed the insured tortfeasor's right to recover contribution and indemnification from the plaintiffs' UM carrier and rejected the UM carrier's argument that it could limit the applicability of UM coverage to a sum which was in excess of other insurance coverage. We held that "the purpose in providing for uninsured motorist protection was to afford the public generally with the same protection that it would have had if the uninsured motorist had carried the same amount of coverage under a public liability policy issued in his name." Id. at 83 (1).

We reject Cotton States' argument that it can "write off" the $10,000 Jones received from Hamill, thereby limiting the applicability of its UM coverage to the sum in excess of that $10,000, i.e., $40,000. Under its argument, had Hamill been insured by a policy providing $50,000 in liability coverage, Cotton States would have been completely absolved from any payment. This reasoning is incorrect under *Wages*, supra, in which the UM coverage Cotton States provides represents the amount O'Gwin would have been entitled to receive had Stapler been so insured. The extent of O'Gwin's injuries is such that there is no question he would be entitled to recover both Hamill's $10,000 and the $50,000 sum from Cotton States representing Stapler's coverage. Thus, Cotton States' attempt to distinguish *Wages* on the basis that that case involved common law contribution must fail.

Finally, Cotton States, in its arguments regarding OCGA § 33-7-11 (b) (1) (D) (ii), fails to recognize that the evidence is uncontroverted Stapler was an operator of an uninsured motor vehicle under OCGA § 33-7-11 (b) (1) (D) (i), not subsection (ii). Thus, there ex-

isted no amount of bodily injury liability insurance and property damage liability insurance for the uninsured motor vehicle operated by Stapler the "difference" of which Cotton States could deduct from the amount it provided O'Gwin. We do not agree with Cotton States that the amount paid by the other tortfeasor, Hamill, operating a separate insured vehicle, comes within the purview of this code section.

(b) Cotton States' other defense enumerated as error here is its contention that it could not be held liable for bad faith penalties in the absence of a judgment entered by the jury against the uninsured motorist. Cotton States argues its liability for damages was not established until it dismissed its answer as to Count I of Jones' complaint asserting Stapler's liability. It is uncontroverted Cotton States tendered payment of the UM coverage to Jones within the statutory period after its dismissal of that part of its answer contesting liability.

In *Wallis v. Cotton States Mut. Ins. Co.*, 182 Ga. App. 147 (354 SE2d 842) (1987), we noted that this court has interpreted the Uninsured Motorist provisions of OCGA § 33-7-11 to require, as a condition precedent to a suit against the insurance carrier, that the insured first sue and recover a judgment against the uninsured motorist, whether known or unknown. The reasoning behind this interpretation, in the absence of explicit statutory language requiring such a condition precedent, is that since the insurer is liable for the amount which the insured "shall be legally entitled to recover" from the uninsured motorist, OCGA § 33-7-11 (a), that liability for damages should be ascertained in an appropriate forum before the bringing of a suit against the insurance company under such coverage. A demand for payment and refusal by the insurer prior to trial on the tort liability of the uninsured motorist was thus held not to eliminate the requirement that a judgment first be obtained against the uninsured motorist as a condition precedent to suit against the insurer. Id. at 148. " 'It follows that an insurer has no duty to accept an insured's demand for payment of a claim prior to judgment being entered against an uninsured motorist. Inasmuch as the insurer is not required to make payment or settlement, it defies logic to argue that [the insurer] could have acted in bad faith in failing to pay the claim prior to judgment in the tort case. [Cit.]' [Cit.]" Id.

We agree with Cotton States that filing of an answer or other response by an insurer in its own name pursuant to OCGA § 33-7-11 (d) does not constitute a waiver of any issues regarding the uninsured motorist's tort liability but merely reflects the insurer's position that, *regardless* of the underlying tort liability, the insurer is not liable under the policy of insurance. See *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165, 170 (268 SE2d 676) (1980); see also *Fire &c. Ins. Co. v. Spell*, 183 Ga. App. 675 (359 SE2d 705) (1987). Thus, the filing of an answer by Cotton States in its own name did not by itself eliminate

the requirement that a judgment first be obtained against Stapler, the uninsured motorist, as a condition precedent to a claim for bad faith penalties against the insurer.

However, "[s]uch provisions and conditions precedent to recovery upon the policy . . . are waived where the insurer has led the insured to believe that the insured will be paid without suit by its actions in negotiating for settlement or direct promises to pay. [Cits.]" *U. S. Fidelity &c. Co. v. Lockhart*, 124 Ga. App. 810, 811-812 (2) (186 SE2d 362) (1971). The record reveals that questions of fact exist as to the contested issue whether Cotton States, through its agent Howard Vandervliet, waived the condition precedent that judgment first be obtained against Stapler. Accordingly, we find no error by the trial court in denying Cotton States' motion for partial summary judgment on this issue. Id. at 812 (3).

(c) Jones contends the trial court erred by denying her motion for summary judgment asserting no questions of fact exist that Cotton States did not act in good faith by denying her claim on behalf of O'Gwin. However, having held in Division 1 (b) above that questions of fact remain whether Cotton States waived the requirement that Jones establish Stapler's liability by judgment before demanding payment from Cotton States, it follows that questions regarding Cotton States' good or bad faith in denying Jones' demand for payment remain for jury determination. See generally *Bituminous Cas. Corp. v. Mowery*, 145 Ga. App. 45, 53 (244 SE2d 573) (1978).

2. Jones contends the trial court erred by granting summary judgment to Cotton States regarding the amount of the bad faith penalty provided in OCGA § 33-7-11 (j). That statute states in pertinent part: "If the insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after a demand has been made by the insured and a finding has been made that such refusal was made in bad faith, the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery and all reasonable attorney's fees for the prosecution of the case under this Code section."

Jones argues that "25 percent of the recovery" means 25 percent of any judgment she might be awarded in the underlying tort action. The trial court construed the statute as providing for a penalty of 25 percent of the recovery of the total UM coverage for which Cotton States is liable, i.e., $50,000. We agree with the trial court's interpretation.

"A cardinal rule of statutory construction is that courts must look to the purpose and intent of the legislature and construe statutes so as to implement that intent. [Cit.]" *Enfinger v. Intl. Indem. Co.*, 253 Ga. 185, 186 (317 SE2d 816) (1984). The Legislature's intent in enacting OCGA § 33-7-11 (j) was to provide a specific procedure and a

limited penalty for noncompliance with OCGA § 33-7-11. See *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 871-872 (2) (310 SE2d 513) (1984). We agree with the trial court that the "recovery" allowed under OCGA § 33-7-11 (j) was intended to be limited to "recovery under this Code section," i.e., recovery of the sums for which the UM carrier is liable. While we cannot ascertain from the history of this statute that the Legislature sought to avoid the "actuarial nightmare" foreseen by the trial court if UM carriers who refused to pay $10,000 in policy limits were held responsible for 25 percent of total damages incurred by the insured, we agree that by looking " 'to the natural and most obvious import of the [statute's] language,' " *Earth Mgt. v. Heard County*, 248 Ga. 442, 444 (283 SE2d 455) (1981), the trial court correctly interpreted OCGA § 33-7-11 (j). Therefore, we find the trial court properly granted summary judgment in favor of Cotton States on this issue.

3. Jones contends the trial court erred by granting summary judgment to Cotton States on her *Yost*, supra, claims in Count III of her complaint. Jones asserted in Count III that Cotton States' refusal to pay on her demand was not made on a good faith basis but was instead intended solely to prolong the litigation. She also alleged that the defenses Cotton States filed to support its denial of payment lacked any substantial justification. We need not address either the trial court's holding that *Yost* cannot be retroactively applied, but see *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 795 (4) (359 SE2d 920) (1987), or the trial court's alternate holding that OCGA § 33-7-11 (j) provides the exclusive remedy for Jones under *McCall*, supra at 872, because even applying *Yost* here, Cotton States was entitled to summary judgment as a matter of law. Pursuant to *Yost*, an injured party may counterclaim for abusive litigation where the other party's claim, defense, or other position involved, inter alia, "such a complete absence of any justiciable issue of law or fact that it reasonably could not be believed that a court would accept the asserted claim, defense, or other position. . . ." Id. at 96 (13). See also *Sasser v. Mixon Contracting*, 181 Ga. App. 710, 713 (2) (353 SE2d 525) (1987). As our holding in Division 1 (b) indicates, regardless how a jury may resolve the issues raised therein, Cotton States asserted a defense with respect to which there existed both a justiciable issue of law (regarding the effect of an insurer filing pursuant to OCGA § 33-7-11 (d) on the condition precedent set forth in *Wallis*, supra) and a justiciable issue of fact (regarding the alleged waiver of the condition precedent by Cotton States' agent, Vandervliet). Therefore, we affirm the trial court's grant of summary judgment to Cotton States on this issue. See generally *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (2) (c) (307 SE2d 914) (1983).

4. We find no abuse of the trial court's discretion in its denial of

Jones' motion for reconsideration. See generally *Daniels v. McRae*, 180 Ga. App. 732, 734 (2) (350 SE2d 317) (1986).

*Judgments affirmed. McMurray, P. J., and Beasley, J., concur.*

Decided November 9, 1987 —
Rehearing denied November 24, 1987 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

*William Q. Bird, Joseph D. Perrotta,* for appellant.
*I. J. Parkerson,* for appellee.