A03A1439. NATIONWIDE MUTUAL INSURANCE COMPANY
v. BOYLAN et al.
(589 SE2d 280)

MIKELL, Judge.

The issue in this case is whether Daniel Boylan and Eloise Boylan are entitled to uninsured motorist benefits under an insurance policy issued to the Boylans by Nationwide Mutual Insurance Company. The stipulated facts show that the Boylans were injured in a collision between vehicles driven by Daniel Boylan and Kiron Chen Roy. Although not involved in the impact, a third vehicle interacted with the vehicle driven by Roy and caused him to lose control and strike the vehicle occupied by the Boylans. For purposes of this appeal, the Boylans and Nationwide agree that this third vehicle was driven by an unknown person referred to as "John Doe," and that Doe and Roy are joint tortfeasors with respect to the collision.

Roy's insurer, Metropolitan Insurance Company, provided bodily injury liability coverage of $100,000 per person. Pursuant to a limited liability release in which the Boylans maintained their right of action against Doe and Nationwide, the Boylans settled their claims

against Roy. Daniel Boylan and Eloise Boylan each received $100,000 from Metropolitan as part of the settlement.

The Boylans suffered personal injury, medical expenses, and other damages which exceeded $125,000 each. Nationwide provided them with uninsured motorist coverage of $25,000 per person for bodily injury. Nationwide filed for summary judgment and asked the trial court to rule that it was not required to pay the Boylans $25,000 each under its uninsured motorist coverage in addition to the $100,000 that they each received from Roy's insurer. The Boylans filed a cross-motion for summary judgment. The trial court ruled in favor of the Boylans, and Nationwide appeals. We affirm for the reasons set forth below.

The disputed question is how to calculate the implicated amount of uninsured motorist coverage. Nationwide argues that we should subtract the available amount of liability insurance carried by the motorists involved in the collision from the available amount of uninsured motorist coverage. Using this method to calculate Nationwide's insurance obligation, Daniel Boylan and Eloise Boylan received $100,000 each in liability insurance payments from Roy's insurer; this amount exceeds the $25,000 in uninsured motorist coverage available to each of them under Nationwide's insurance policy; and so Nationwide would not accrue any insurance liability. The Boylans, on the other hand, claim that the uninsured driver, Doe, should be considered separately. After settling with Roy, the Boylans had a cause of action against Doe as a joint tortfeasor.[1] The Boylans contend that Nationwide must provide coverage with respect to Doe because Doe was an uninsured motorist. We agree with the Boylans.

In *Jones v. Cotton States Mut. Ins. Co.*,[2] Mark O'Gwin was injured when the vehicle he was driving collided with vehicles driven by Billy George Stapler and Tony Hamill. Evelyn Jones, O'Gwin's guardian, received $10,000 from Hamill's liability insurer in exchange for a covenant not to sue Hamill, and then filed an action against Stapler, who was uninsured. Jones served Cotton States Mutual Insurance Company as O'Gwin's uninsured motorist insurer.[3]

The total amount of uninsured motorist coverage available to O'Gwin was $50,000. Cotton States eventually paid $50,000 and moved for summary judgment on Jones's claim for bad faith penalties and attorney fees. Cotton States argued that no question of fact existed as to its good faith in denying Jones's demand for payment. In particular, Cotton States argued that the trial court erred by prohib-

---

[1] See *Miller v. Grand Union Co.*, 270 Ga. 537, 538 (1) (512 SE2d 887) (1999).
[2] 185 Ga. App. 66 (363 SE2d 303) (1987).
[3] Id.

iting it from offsetting the $10,000 paid by Hamill's insurer against the $50,000 in uninsured motorist coverage.[4] We rejected this argument, finding that "the purpose in providing for uninsured motorist protection was to afford the public generally with the same protection that it would have had if the uninsured motorist had carried the same amount of coverage under a public liability policy issued in his name."[5] Applying *Jones*'s reasoning to the case at bar, we hold that Nationwide may not offset its uninsured motorist coverage with payments attributable to Roy's liability insurance.

We reject Nationwide's invitation to overrule *Jones*. Nationwide contends that in *Jones* we erroneously relied on *Wages v. State Farm &c. Ins. Co.*,[6] because *Wages* was decided before the legislature enacted OCGA § 33-7-11 (b) (1) (D) (ii) ("subsection (ii)").[7] Nationwide argues that subsection (ii) requires that the total available liability insurance be subtracted from the total available uninsured motorist coverage to determine the implicated amount of uninsured motorist coverage.[8] This argument fails to show that *Jones* was wrongly decided. Subsection (ii) provides that a vehicle which carries liability insurance may nevertheless be considered an "Uninsured Motor Vehicle" to the extent that the available liability coverage on such vehicle is less than the uninsured motorist coverage available to the insured. In *Jones*, we expressly considered subsection (ii)[9] but found that driver Stapler, analogous to driver Doe under the facts here, was an operator of an uninsured motor vehicle under OCGA § 33-7-11 (b) (1) (D) (i) ("subsection (i)"), which provides that an "Uninsured Motor Vehicle" is one as to which there is "[n]o bodily injury liability insurance and property damage liability insurance." *Jones*, therefore, did not overlook subsection (ii) and cannot be distinguished from the case at bar on the grounds argued by Nationwide.

Nationwide also relies on *Sanborn v. Farley*,[10] which it contends is the applicable controlling authority. In that case, Sanborn was a

---

[4] Id. at 66-67 (1) (a).

[5] (Punctuation omitted.) Id. at 67 (1) (a), quoting *Wages v. State Farm &c. Ins. Co.*, 132 Ga. App. 79, 83 (1) (208 SE2d 1) (1974).

[6] Supra.

[7] Ga. L. 1980, p. 1428 et seq. This subsection provides, in pertinent part, that an "Uninsured Motor Vehicle" means a motor vehicle as to which there is:

[b]odily injury liability insurance and property damage liability insurance with available coverages which are less than the limits of the uninsured motorist coverage provided under the insured's insurance policy, but the motor vehicle shall only be considered to be uninsured for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy. . . .

[8] See *Sanborn v. Farley*, 192 Ga. App. 376, 377 (385 SE2d 6) (1989).

[9] *Jones*, supra at 67 (1) (a).

[10] Supra.

passenger in a car driven by Jordan which collided with a car driven by Farley. Sanborn sued both Farley and Jordan. Sanborn had $25,000 in uninsured motorist coverage through her own policy, and an additional $15,000 in uninsured motorist coverage was available to her from insurance on Jordan's car. Farley and Jordan each had insurance policies that provided $15,000 in bodily injury liability coverage. Sanborn wanted to compare the $40,000 in available uninsured motorist coverage to the insurance available to each of the two drivers in turn, leaving each driver uninsured for $25,000. We rejected Sanborn's argument and ruled that the proper methodology for computing the available uninsured motorist coverage involved " 'stacking' the limits of all of the available uninsured motorist coverage and setting off the limits of the available liability coverage."[11]

*Sanborn* differs from the facts of this case because the two drivers in *Sanborn* were insured, placing both vehicles within subsection (ii). In contrast, subsection (ii) does not apply to the vehicle driven by Roy or the vehicle driven by Doe. Roy was not underinsured, and Doe had no available insurance, placing his vehicle within subsection (i). We note that a result implicating Nationwide's insurance comports with the intentions of the Uninsured Motorist Statute "to place insureds in the same position they would be in relation to coverage if the tortfeasors causing the injuries had obtained at least the minimum prescribed liability insurance."[12] If Doe had been so insured, the Boylans would have been entitled to recover from Doe's insurer in addition to Roy's insurer. Accordingly, the trial court correctly denied Nationwide's motion for summary judgment.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 22, 2003.

*Miller, Cowart, Cates & Howe, Wallace Miller III, Joel A. Howe, Hammond, Carter & Watson, A. Cullen Hammond*, for appellant.
*John S. D'Orazio*, for appellees.

---

[11] (Citation and punctuation omitted.) Id. at 377.
[12] (Citation and punctuation omitted.) *Young v. Maryland Cas. Co.*, 228 Ga. App. 388, 390 (1) (491 SE2d 839) (1997).