**FIRST DIVISION**
**DOYLE, P. J.,**
**REESE and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 11, 2022**

# In the Court of Appeals of Georgia

A21A1446. CURRY v. ALLSTATE PROPERTY & CASUALTY
   INSURANCE CO.

GOBEIL, Judge.

James T. Curry filed the instant action against Allstate Property & Casualty Insurance Company ("Allstate") pursuant to OCGA § 33-7-11 (j), a statute which penalizes an insurer for bad faith refusal to pay a demand for uninsured or underinsured motorist ("UM") insurance. The trial court granted partial summary judgment to Allstate on the issue of damages permitted under the statute. Curry appeals, challenging the court's rulings pertaining to the extent of damages and attorney fees he may seek. For the reasons stated below, we affirm in part the trial court's order, reverse in part, and remand the case for additional proceedings consistent with this opinion.

The facts relevant to the issues on appeal are not in dispute. On January 12, 2015, Curry was injured in a car accident that was caused by the negligence of a third-party driver. The other driver was insured for $25,000, which Curry received from the other driver's insurance company under a limited release allowing Curry the right to pursue UM benefits.

At the time of the accident, Curry was insured with Allstate under an automobile policy that provided $30,000 worth of UM coverage. On May 17, 2016, Curry made a demand for the policy limits of his UM coverage. Allstate did not tender this money to Curry within 60 days of his demand. Curry then sued the at-fault driver and was awarded a judgment of $85,579.02 plus costs (the "underlying tort action").

In October 2020, Curry filed the instant suit against Allstate pursuant to OCGA § 33-7-11 (j),[1] claiming that Allstate rejected his demand in bad faith.[2] Curry sought:

---

[1] OCGA § 33-7-11 (j) provides that if an insurer fails to pay a demand within 60 days, and such failure is found to be in bad faith, "the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery or $25,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the case under this Code section."

[2] We note that the question of Allstate's bad faith remains before the trial court and is not at issue in this appeal.

(1) 25 percent of the entire verdict of $85,579.02 from the underlying tort action, and (2) attorney fees for expenses associated with both the instant suit and the underlying tort action. Allstate answered the complaint, denying the claim of bad faith. Allstate also filed a motion for partial summary judgment, arguing that the 25 percent figure listed in OCGA § 33-7-11 (j) limited Curry to recovering 25 percent of his UM policy limit of $30,000, rather than 25 percent of the verdict in the underlying tort action. Allstate also contested Curry's request for attorney fees, arguing that he was limited to recovering attorney fees incurred in the instant action, rather than those associated with the underlying tort action.

The trial court issued an order granting Allstate's motion for partial summary judgment. Specifically, the court found that Curry "may seek to recover not more than twenty-five percent (25%) of the $30,000.00 UM coverage already paid by [Allstate] in the original tort action, plus reasonable attorney's fees for the prosecution of the instant action." The instant appeal followed.[3]

It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court

---

[3] Curry filed an application for interlocutory appeal, which we granted, as the grant of partial summary judgment is reviewable by direct appeal. Case No. A21I0170 (April 15, 2021).

3

erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence.

*Rubin v. Cello Corp.*, 235 Ga. App. 250, 250-251 (510 SE2d 541) (1998) (citation and punctuation omitted). "When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000) (citation omitted).

1. On appeal, Curry first contests the trial court's finding that he may seek damages of only 25 percent of the limits of his UM coverage. Instead, he argues he is entitled to seek 25 percent of the verdict in his underlying tort action.[4] We disagree.

---

[4] Curry actually argues on appeal that "the recovery" should be defined as "the combined amounts of liability and [UM] motorist benefits the plaintiff received[.]" However, that is not what Curry sought in his lawsuit against Allstate. He did not seek 25 percent of the combined amounts of liability insurance from the at-fault driver ($25,000) plus the amount of UM benefits from Allstate ($30,000). He sought 25 percent of the amount awarded to him in the underlying tort action ($85,579.02). Further, he did not raise this argument (or attempt to distinguish *Jones*) to the trial court. Thus, to the extent Curry is raising this argument for the first time on appeal, we are not required to consider it. *Yakob v. Kidist Mariam Ethiopian Orthodox Tewahedo Church, Inc.*, 359 Ga. App. 13, 25 (4) n. 7 (856 SE2d 722) (2021). Nonetheless, for the reasons set forth in the opinion, it is a distinction without a difference.

4

The statute at issue is the Georgia Uninsured Motorist Act, OCGA § 33-7-11. To provide context for Curry's arguments, we first consider the structure of the statute as a whole. We have explained that the

> purpose of uninsured motorist or UM coverage is to place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance. The Georgia uninsured motorist statute is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is a beneficiary.

*Donovan v. State Farm Mut. Automobile Ins. Co.*, 329 Ga. App. 609, 611 (765 SE2d 755) (2014) (citation and punctuation omitted). To that end, the statute sets minimum requirements for UM endorsements in auto insurance policies. OCGA § 33-7-11 (a). The statute then defines several terms, including "[u]ninsured motor vehicle[,]" which is defined to include, as relevant here, a motor vehicle for which the liability insurance covering the vehicle does not cover the UM claimant's full damages. OCGA § 33-7-11 (b) (1) (D) (ii) (I). See *Donovan*, 329 Ga. App. at 611 (explaining that one type of UM coverage is an "excess policy which provides for UM insurance in excess of any available liability insurance").

The statute goes on to explain that a UM claimant may file an action against the at-fault driver, and, if there is a belief that the UM claimant will be filing a claim

5

against his UM insurer, the UM claimant must serve the insurer with a copy of the action and all pleadings. OCGA § 33-7-11 (d). See *Ward v. Allstate Ins. Co.*, 265 Ga. App. 603, 603-604 (595 SE2d 97) (2004) ("Generally, the insured's right to recover under an uninsured motorist policy is established by obtaining a judgment against the uninsured motorist, thus showing that the insured is legally entitled to recover those damages.") (citation and punctuation omitted). The insurer is entitled to certain protections in the underlying tort lawsuit and in the calculation of how much the insurer may owe the UM claimant. OCGA § 33-7-11 (d), (f), (h), (i).

Finally, as stated above, subsection (j) provides that if an insurer fails to pay a UM coverage demand within 60 days, and such failure is found to be in bad faith, "the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than *25 percent of the recovery* or $25,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the case under this Code section." (Emphasis supplied.)

We had the opportunity to consider the meaning of the term "the recovery" in *Jones v. Cotton States Mut. Ins. Co.*, 185 Ga. App. 66, 69-70 (2) (363 SE2d 303) (1987). There, we considered the same argument put forth by Curry (that the statute intended to refer to a claimant's recovery in the underlying tort action), and rejected

6

such argument. Id. at 69 (2). Instead, we found that "the statute [provides] for a penalty of 25 percent of the recovery of the total UM coverage for which [the UM insurer] is liable." Id. We explained that, with this statute, the legislature "provide[d] a specific procedure and a limited penalty for noncompliance with OCGA § 33-7-11[,]" and "the 'recovery' allowed under OCGA § 33-7-11 (j) was intended to be limited to 'recovery under this Code section,' i.e., recovery of the sums for which the UM carrier is liable." Id. at 69-70 (2).

We agree with Allstate that *Jones* applies to the instant appeal. OCGA § 33-7-11 covers UM endorsements in our state, and provides the requirements of coverage and the process by which a UM claimant shall recover funds from their insurer. The statute contemplates the UM claimant filing an underlying tort suit against the driver of the "uninsured motor vehicle" along with the UM insurer. However, the underlying tort suit is merely the avenue by which the UM claimant recovers under the UM endorsement in his auto policy. Nothing in the statute would allow a UM claimant to recover more than the limits of his UM endorsement. Thus, we agree that "the

recovery" under OCGA § 33-7-11 (j) refers to "sums for which the UM carrier is liable." *Jones*, 185 Ga. App. at 69-70 (2).[5]

Curry attempts to distinguish his case from *Jones* because in *Jones* there was no liability insurance in the underlying tort case. We, however, fail to see how this changes the application of the *Jones* holding to this instant appeal. In *Jones*, the claimant had not yet received a verdict in the underlying tort case, so the amount of the verdict was hypothetical when our Court rendered its holding. *Jones*, 185 Ga. App. at 69 (2). Thus, the specifics of how much liability insurance may be available to the claimant or may offset the verdict was irrelevant to our holding in *Jones* and does not prevent its application to this appeal.

In conclusion, we follow the precedent set in *Jones*, and hold that Curry may recover, pursuant to OCGA § 33-7-11 (j), "not more than 25 percent" of the limits of his UM coverage with Allstate or "$25,000, whichever is greater." OCGA § 33-7-11 (j). We affirm the order of the trial court to this extent.

---

[5] In adopting this reasoning, we keep in mind that OCGA § 33-7-11 (j) provides for a penalty, which must be construed strictly in favor of the penalized party. *TEC Am., Inc. v. DeKalb County Bd. of Tax Assessors*, 170 Ga. App. 533, 536 (1) (317 SE2d 637) (1984) ("forfeitures and penalties are not favored and statutes relating to them must be strictly construed, and in a manner as favorable to the person against whom the forfeiture or penalty would be exacted as is consistent with fair principles of interpretation") (citation and punctuation omitted).

2. Curry also contests the trial court's finding that the attorney fees he may recover in the instant action are limited to expenses associated with the instant action, as opposed to the expenses associated with the underlying tort action. On this issue, we agree, at least in part, with Curry's arguments.[6]

As to attorney fees, OCGA § 33-7-11 (j) states that, if bad faith is found on the part of the insurance company in refusing to pay a demand within 60 days, the insured shall be entitled to

> all reasonable attorney's fees for the prosecution of the case *under this*
> *Code section*. The question of bad faith, the amount of the penalty, if
> any, and the reasonable attorney's fees, if any, shall be determined in a
> separate action[7] filed by the insured against the insurer after a judgment

---

[6] Unlike the first issue discussed above, research reveals that we have not squarely addressed this issue.

[7] Under a prior version of the statute, a UM claimant was required to raise the issues of the UM insurer's bad faith and attorney fees in the tort action against the uninsured motorist. See *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 871 (2) (310 SE2d 513) (1984). However, the statute was changed to include this as a separate action. As the Supreme Court explained in *Lewis v. Cherokee Ins. Co.*, 258 Ga. 839, 841 n. 2 (375 SE2d 850) (1989) ("*Lewis I*"):

> Following our opinion in *McCall*, the Legislature amended OCGA § 33-
> 7-11 (j) to address the problem pointed out by Justice Gregory in his
> dissent. Under the amended statute, the trial of the issue of the insurer's
> good or bad faith in denying the insured's demand is determined in a

has been rendered against the uninsured motorist in the original tort action.

(Emphasis supplied.)

The parties' contentions pivot on the meaning of the aforementioned reference to "this Code section." Curry argues that "this Code section" refers to the entire Code section, OCGA § 33-7-11, while Allstate argues that "this Code section" refers only to subsection (j) and hence cannot extend to expenses in prosecuting the underlying tort action. We necessarily begin our analysis by looking at the statute itself.

The text at issue (OCGA § 33-7-11 (j)) sets forth that, after a finding of bad faith on the part of the UM insurer, a UM claimant may recover attorney fees "for the prosecution of the case under this Code section." OCGA § 33-7-11 (j). Yet, earlier in the same sentence, subsection (j) uses the phrase "this Code section" clearly referring to OCGA § 33-7-11 as a whole: "If the insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after a demand has been made by the insured . . ." OCGA § 33-7-11 (j). If "this Code section" were to be

_____

separate suit so that, for the insurer's protection, the prejudicial issue of insurance coverage is not injected into the trial of the case against the uninsured motorist.

10

interpreted as Allstate suggests, the foregoing phrase would be nonsensical:[8] the UM

claimant does not make a demand for a loss under subsection (j); the UM claimant

makes a demand based on a loss sustained from an uninsured motor vehicle. See

*Lewis I*, 258 Ga. at 840 (explaining when demand may be made to insurance company

after a loss covered under the UM statute had been sustained).

Further, it is illogical to apply one definition to a term in one part of a sentence,

and another to the same term in another part of that sentence, lending additional

support to interpreting "this Code section" as more broadly referencing OCGA § 33-

7-11. See *Zaldivar v. Prickett*, 297 Ga. 589, 592 (1) (774 SE2d 688) (2015) ("there

is a natural presumption that identical words used in different parts of the same act

are intended to have the same meaning") (citation and punctuation omitted). Thus,

applying these statutory tools, "the case under this Code section" for which a UM

claimant may be entitled to attorney fees could refer to either the underlying tort

action outlined in subsection (d), or the separate bad faith action outlined in the next

sentence of subsection (j).

---

[8] See *West v. City of Albany*, 300 Ga. 743, 745 (797 SE2d 809) (2017) ("courts should construe a statute to give sensible and intelligent effect to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless") (citation and punctuation omitted).

Significantly, this broader definition also finds support in OCGA § 33-7-11 (j)'s use of two distinct terms, "subsection" and "Code section" to refer to seemingly different parts of the Code.[9] Specifically, the statute explicitly refers to "this subsection" in explaining that limitations contained "in this subsection" may not apply to a fee agreement between the claimant and his or her attorney for the services of the attorney "in the action against the insurer." OCGA § 33-7-11 (j). This use of "subsection" suggests that the General Assembly chose the word intentionally to refer to a smaller section of the statute than "Code section." The General Assembly could have, in defining the limits of the attorney fee penalty, used the term "this subsection" if it intended to refer to only subsection (j). And, it could have used the phrase "the action against the insurer" if it intended to refer only to the separate action. Therefore, the failure to use these more specific phrases in OCGA § 33-7-11 (j)'s first sentence (stating that a UM claimant may be entitled to "all reasonable attorney's fees for the prosecution of the case under this Code section[,]") while using them elsewhere within OCGA § 33-7-11 (j) supports the finding that the General Assembly did not

---

[9] We also note that the General Assembly defined the "[a]rrangement and numbering system" of the Official Code of Georgia Annotated to include and start with "title," then in descending order later followed by "Code section," then immediately followed by "subsection" as distinct labels of statutory hierarchy. See OCGA § 1-1-1 (b) (2).

12

foreclose the possibility of recovering attorney fees incurred in the underlying tort action. See *Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 148 (2) n. 6 (682 SE2d 165) (2009) (where "the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended") (citation and punctuation omitted).

In support of the trial court's ruling that Curry may only recover attorney fees associated with the separate bad faith action, Allstate relies on *Cherokee Ins. Co. v. Lewis*, 204 Ga. App. 152, 154 (2) (418 SE2d 616) (1992) ("*Lewis II*"). In *Lewis II*, we found that a UM insurance claimant was entitled to recover attorney fees pursuant to OCGA § 33-7-11 (j) based on the bad faith actions of his insurance company. Id. We, however, struck the attorney fee award because there had been no evidence presented in the action from which the court could determine what portion of the incurred attorney fees were attributable to the bad faith claim. See id. at 154-155 (2). In so holding, we stated that Lewis was "entitled to recover attorney fees only for that portion of the fees which are allocable to the attorney's efforts to prosecute the cause of action, against appellant, on which the prayer for attorney fees is based." Id. at 154 (2) (citation and punctuation omitted).

Allstate argues that this holding from *Lewis II* means that a UM claimant may seek attorney fees for only the expenses related to the separate OCGA § 33-7-11 (j) action for bad faith. However, we read *Lewis II* to mean that a UM claimant must prove that the claimed attorney fees are associated with the insurance company's bad faith actions. We do not believe that *Lewis II* foreclosed the possibility that a UM claimant may be entitled to attorney fees and expenses associated with the underlying tort action if he or she can present sufficient evidence of expenses he or she incurred and sufficient evidence that such expenses were attributable to the insurer's bad faith.

Therefore, based on the statutory language as described above, Curry must be given the opportunity to prove Allstate's alleged bad faith and how it resulted in his attorney fees. The fees would include, obviously, applicable expenses incurred in the prosecution of the OCGA § 33-7-11 (j) separate action, but they also could potentially include such expenses incurred in the underlying tort action, depending on what evidence is presented and what the factfinder decides. Without a finding of bad faith in this case, it is impossible to determine whether and to what extent Curry is entitled to attorney fees.

We hold only that OCGA § 33-7-11 (j) does not necessarily limit a UM claimant to attorney fees incurred in the prosecution of the separate action against the

14

UM insurer. Whether a UM claimant will be able, in reality, to prove that attorney fees incurred in the underlying tort action are recoverable is unclear, given the requirement that a UM claimant first obtain an underlying tort judgment before pursuing the bad faith claim. See *Lewis I*, 258 Ga. at 840. And importantly, any such attorney fees determination is not unlimited and must bear in mind the purpose of uninsured motorist coverage: "to place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance . . . [and] to protect the insured as to his action loss, within the limits of the policy or policies of which he is a beneficiary." *Donovan v. State Farm Mut. Auto. Ins. Co.*, 329 Ga. App. 609, 611 (765 SE2d 755) (2014) (citation and punctuation omitted). Ultimately, bad faith is a fact question for the trial court or a jury to decide in the first instance. See *Amica Mut. Ins. Co. v. Sanders*, 335 Ga. App. 245, 250 (779 SE2d 459) (2015) ("Ordinarily, the question of good or bad faith is for the jury[.]") (citation and punctuation omitted). Accordingly, we affirm in part and reverse in part the trial court's order in this case, and remand for additional proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Doyle, P. J., and Reese, J., concur.*